**John IDOUX**

v.

**LAMAR UNIVERSITY SYSTEM, et al.**

**Civ. A. No. 1:92CV440.**

United States District Court,
E.D. Texas,
Beaumont Division.

July 13, 1993.

Laurence Wade Watts, Watts, Glover & Wells, Houston, TX, for John Idoux.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., General Litigation Div., Austin, TX, Robert J. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Lamar University System, George McLaughlin, Board of Regents, for Lamar University System, Lanny Haynes, Mike Ramsey, Wayne Reaud, Madaline Kaye Savoy, Ron Steinhart.

Hubert Oxford, III, Benckenstein, Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., General Litigation Div., Austin, TX, Lipscomb Norvell, Jr., Benckenstein Norvell & Nathan, Beaumont, TX, Toni Hunter, Asst. Atty. Gen., Austin, TX, Grant Cook, Curt W. Moy, Keck, Mahin & Cate, Houston, TX, Robert J. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Ted Moor.

Ted Moor, pro se.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., General Litigation Div., Toni Hunter, Asst. Atty. Gen., Austin, TX, Grant Cook, Curt W. Moy, Keck, Mahin & Cate, Houston, TX, Robert J. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Amelie Cobb.

Amelie Cobb, pro se.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., General Litigation Div., Toni Hunter, Asst. Atty. Gen., Austin, TX, Robert J. Hambright, Orgain Bell & Tucker, George Michael Jamail, Bernsen Jamail & Goodson, Beaumont, TX, for C.W. Conn.

Hubert Oxford, III, Benckenstein Oxford & Johnson, Beaumont, TX, Amy R. Castaneda, Asst. Atty. Gen., General Litigation Div., Austin, TX, for all defendants.

## ORDER

KENT, District Judge.

Before the Court is the Motion for Summary Judgment of Defendants C.W. Conn, Ted Moor, and Amelie Cobb, in their individual capacity. For the reasons set forth below, the Court GRANTS this motion as to the Plaintiff's claims brought under the First and Fourteenth Amendments of the United States Constitution and article I, §§ 3, 19, and 29 claims of the Texas Constitution, but DENIES the motion as to the claim brought under article I, § 8. Because this state law claim is the sole remaining cause of action in this suit, the Court exercises its discretion to REMAND this case to the 60th Judicial District Court of Jefferson County, Texas.

*Facts*

This case arises out of the alleged wrongful termination of the Plaintiff's employment as the interim president and executive vice-president of Lamar University ("Lamar"). The Plaintiff claims that this dismissal was in direct retaliation for his repeated disagreements with many of the practices and activities of Lamar's Board of Regents and George McLaughlin, Lamar's chancellor. Primarily, the Plaintiff feels that the Defendants terminated him for refusing to consent to what he felt were unauthorized and unethical payments to Al Barbre, Lamar's former woman's basketball coach. But, the Plaintiff also claims that his objections to other unethical, if not illegal, behavior also led to the dismissal. Specifically, the Plaintiff asserts that he opposed requests for improper "swapping" of restricted and unrestricted university funds, violations of the Plaintiff's authority to make equitable salary adjustments, permitting the faculty to engage in private enterprise at Lamar's expense, and violations of Lamar's alcohol policy.

Subsequent to his dismissal, the Plaintiff filed suit against. Lamar, McLaughlin, the Board of Regents, the members of the Board of Regents in their official capacity, and C.W. Conn, Ted Moor, and Amelie Cobb in their individual capacity for allegedly violating the Plaintiff's rights guaranteed under the United States and Texas Constitutions. The Court has already dismissed Lamar, the

Board of Regents, and the members of the Board of Regents in their official capacity from this suit. (Instrument # 42) Defendants C.W. Conn, Ted Moor, and Amelie Cobb now have also filed a Motion for Summary Judgment. This motion asserts that the Court should dismiss these remaining Defendants because, as public officials, they are entitled to qualified immunity.

*Qualified Immunity*

▮▮▮ The question of whether qualified immunity will protect an official is one of law for the Court to decide. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–2816, 86 L.Ed.2d 411 (1985). To be entitled to qualified immunity, a governmental official must have been performing discretionary functions, and his conduct must not have violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[1] However, prior to considering whether a defendant is entitled to qualified immunity, a district court must first address the threshold consideration of whether the plaintiff's complaint even states a violation of a constitutional right. *See Siegert v. Gilley,* —— U.S. ——, ——, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991). If the plaintiff fails to meet this burden, then the district court must dismiss the plaintiff's case. *See Quives v. Campbell,* 934 F.2d 668, 670–71 (5th Cir.1991).[2]

---

**1.** Essentially, this determination involves the implementation of a two-part test. However, because of the conclusions that the Court reaches as to the first part of this test, the Court does not consider the second part. Nevertheless, as set out above, the first aspect of this test requires the Court to determine whether the plaintiff's allegations, if accepted as true, state a claim for a violation of any rights secured under the Constitution. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992). If the plaintiff states a constitutional violation, the Court must then consider whether the right which the governmental official allegedly violated was "clearly established." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law, the

unlawfulness must be 'apparent.'" *Id.* (citations omitted). If the plaintiff cannot demonstrate the clear establishment of the alleged right, then the district court must dismiss. But, if the right is clearly established, then the court must examine the "objective reasonableness" of the defendant's conduct in reference to established law. *Salas,* 980 F.2d at 305–06.

**2.** As a further requirement, a district court must also examine 42 U.S.C. § 1983 claims in light of the Fifth Circuit's opinion in *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). In that case, the Fifth Circuit held that "[i]n cases against governmental officials involving the likely defense of immunity we require of trial judges that they demand that the plaintiff's complaint state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliott,* 751 F.2d at 1473. Consequently, a plaintiff invoking 42 U.S.C. § 1983

*Freedom of Speech*

█ The Plaintiff first claims that the Defendants violated his constitutionally protected right to free speech. Specifically, the Plaintiff claims that the Defendants terminated his employment in retaliation for his speaking out on several matters concerning the university. It is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Page v. Delaune,* 837 F.2d 233, 237 (5th Cir.1988). However, in order for a public employee to establish a deprivation of free speech, the employee must demonstrate that:

1. the speech addresses a matter of public concern;

2. the employee's interest in communicating upon matters of public concern outweighs the defendant's interest in promoting the efficiency of the public service they perform; and

3. the employee's discipline was motivated by the uttered speech.

*Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir.1990).

█ Whether a speech addresses a matter of public concern depends upon "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). In the instant case, the Court has little doubt that the speech in question addresses matters of public concern. The Plaintiff's complaint indicates that throughout his term as interim president, the Plaintiff steadfastly objected and refused to consent to what he felt were unauthorized and unethical, if not illegal, practices on the part of McLaughlin and the Board of Regents. Allegations of mismanagement in schools almost always raises the imprimatur of public concern. *See Brinkmeyer v. Thrall Independent School District,* 786 F.2d 1291, 1294 (5th Cir.1986). Moreover, the Fifth Circuit has specifically held that misbehavior of any kind on the part of public officials implicates public concern. *Brawner v. City of Richardson,* 855 F.2d 187, 192 (5th Cir.1988). Even though these internal complaints were not immediately released to the public, they clearly relate to the evaluation of a governmental agency. In any event, "[t]he fact that the speech was delivered privately ... rather than to Bob Woodward and Carl Bernstein, does not necessarily render the speech any less protected." *Brown v. Texas A & M University,* 804 F.2d 327, 337 (5th Cir.1986) (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 414–415, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979)). Additionally, even though the activities and practices to which the Plaintiff objected are not particularly scurrilous, they must be viewed in the context of the investigation conducted by the National Collegiate Athletic Association ("N.C.A.A.") at that time. If some of these activities were indeed improper and had been

must plead "specific facts, not merely conclusory allegations." *Id.* at 1479.

The Plaintiff, in his response to this Motion for Summary Judgment, claims that the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), obliterated the heightened pleading standard enunciated in *Elliott.* However, this is simply not the case.

In *Leatherman,* the district court dismissed a 42 U.S.C. § 1983 case against a municipality because the plaintiff failed to meet the *Elliott* standard. The Supreme Court, in overruling this decision, held that requiring a heightened pleading standard in cases against municipalities wrongly equates freedom from liability with freedom from suit. *Leatherman,* — U.S. —, 113 S.Ct. at 1162, 122 L.Ed.2d at 523. As the Court pointed out, municipalities are free from respon-

deat superior liability for the acts of their employees and officials. Thus, municipalities may only be held liable if a municipal policy and custom caused the constitutional injury. *See id.* However, this is a far cry from the immunity from suit enjoyed by states and local officials sued in their individual capacity. In this regard, the Supreme Court noted: "We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Id.*

Therefore, *Leatherman* only emasculates *Elliott* as to 42 U.S.C. § 1983 actions against municipalities. In fact, *Leatherman* really has no effect on *Elliott* at all, rather it instead overrules the cases that extended *Elliott* to suits against municipalities, such as *Palmer v. San Antonio,* 810 F.2d 514 (5th Cir.1987).

discovered by the N.C.A.A., it is possible that Lamar could have been subject to severe sanctions and penalties and further public embarrassment and humiliation. Thus, the Court concludes that the speech set out in the Plaintiff's complaint is indeed public speech.

■ As to the second test of whether the Plaintiff alleges a violation of free speech, the Court concludes that the Plaintiff's interest in communicating these matters of public concern outweighs the Defendants' interest in promoting and administering an efficient university. There is little doubt that those who engage in whistleblowing occupy a special place in the protective bosom of the First Amendment. *Brown*, 804 F.2d at 337. "Public employees are uniquely qualified to reveal unseemly machinations by their fellow employees because they observe them on a daily basis." *Id.* The specter of public misconduct so often seems to haunt this country's institutions, eroding confidence and causing a debilitating sense of cynicism among the populace that hinders the ability of governments at all levels to effectively operate. The Court's desire to have all manner of illegal and unethical behavior exposed and punished forces the Court to conclude that only matters of national security and the like should ever prevent a public employee from revealing or generally objecting to improper public practices. In as much as it would be ludicrous to even suggest that such concerns affect the present case, the Court concludes that the Defendants' interest in promoting and administering an university does not even remotely outweigh the Plaintiff's, or anyone's, interest in revealing alleged public improprieties at Lamar.

■ The third factor in determining whether the Plaintiff has alleged a constitutional violation of free speech is whether the Plaintiff's termination was motivated by his objections to the Defendants' activities. Unfortunately, for the Plaintiff, the Court concludes that it was not.

■ The Supreme Court has mandated that in cases like this, where a plaintiff has already demonstrated that his conduct was constitutionally protected, the plaintiff must also demonstrate that this conduct was a "substantial factor" or a "motivating factor" for the defendants action toward the plaintiff. *See Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The Plaintiff simply has not alleged enough specific facts with specific particularity showing that his objections to various Board and university practices were a substantial or motivating factor of his termination. *See* note 2, *supra.* Indeed, the Plaintiff does not provide *any* facts that demonstrate that his objections to requests for improper "swapping" of restricted and unrestricted university funds, violations of the Plaintiff's authority to make equitable salary adjustments, permitting the faculty to engage in private enterprise at Lamar's expense, and violations of Lamar's alcohol policy had anything to do with his termination. The only objection that the Plaintiff even remotely relates to his termination is his opposition to the payments to Al Barbre.

The Plaintiff claims that the "summary judgment evidence shows that Defendants Moor, Cobb, and Conn were aware that Plaintiff protested" these payments. *Plaintiff's Response and Opposition to Defendant's Motion for Summary Judgment* at p. 11 (hereinafter: *"Response"*). However, the summary judgment evidence shows nothing of this kind. It is undisputed that the Defendants were present at the meeting where McLaughlin asked the Plaintiff to resign, but the only affidavit offered by the Plaintiff that addresses this issue, the Plaintiff's own, contains no first hand knowledge that the Defendants knew of the Plaintiff's opposition to various Board and university practices. This affidavit contains only the assertion that the Plaintiff told *McLaughlin* of his objections, not that he informed the Defendants in any way. The Plaintiff does make a hearsay assertion that McLaughlin expressed to the Plaintiff that the Defendants wanted the payments made, but the Plaintiff does not assert that McLaughlin had told the Defendants of the Plaintiff's objections. In attempting to demonstrate the relationship between his protected speech and his termination, the Plaintiff has provided the Court with nothing other than the mere conclusion that, because

the Defendants were on hand at the fateful meeting, the Defendants both knew of the Plaintiff's various objections and sought the Plaintiff's termination as a result of these objections. On the other hand, the Defendants have each filed an affidavit indicating that, until the Plaintiff was terminated, they were unaware that the Plaintiff had voiced any objections to the payments or other policies, practices, or procedures of Lamar or the Board. Furthermore, the Defendants assert that they were present at the meeting merely as witnesses and representatives of the school.

Therefore, although the Court concludes that the Plaintiff adequately demonstrates that he engaged in protected speech and that his interest in engaging in this speech outweighs any interest of the Defendants, the Court also concludes that the Plaintiff has not alleged specific facts demonstrating that his protected speech was a motivating or substantial factor in his termination. Consequently, the Court must also then conclude that the Plaintiff has failed to establish that the Defendants deprived the Plaintiff of his constitutionally protected right to free speech.

*Property Interest*

■ The second constitutional violation alleged by the Plaintiff is that the Defendants violated the Plaintiff's Fourteenth Amendment rights by depriving the Plaintiff of his property interest in continued employment as the interim president and executive vice president without due process. In order to bring an action of this type, a plaintiff must clearly establish the existence of a property interest. *Bishop v. Wood,* 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976); *Brown,* 804 F.2d at 333–34. A plaintiff must state "with specificity the particular state rule, regulation, law or understanding between the parties" creating the property interest. *Brown,* 804 F.2d at 334. In the Court's mind, the Plaintiff fails to establish that he had a property interest in either position.

■ At the outset, the Plaintiff must overcome the Texas state law presumption that all employees are "at will" employees until shown otherwise. *See Sabine Pilot Ser-*

*vice v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985). Consequently, in as much as the Plaintiff provides no summary judgment evidence relating to the executive vice president position, the Court cannot find that he possessed a property interest in it. However, as to interim president, the Plaintiff's Response, not his affidavit, claims that he possessed a one year contract to serve in this position. Unfortunately, this unsubstantiated recitation is not sufficient. Without providing greater detail, in the form a sworn affidavit, regarding the exact nature of this contractual relationship, the Plaintiff cannot overcome the presumption that he was an "at will" employee. The Court finds support for this decision in *Brown v. Texas A & M University.* In that case, a plaintiff's 42 U.S.C. § 1983 complaint for the deprivation of a property interest in employment only stated, "Plaintiff was an employee of an agency of the State of Texas, and was subject to being discharged only for cause." *Brown,* 804 F.2d at 333. The Fifth Circuit stated that this "bare recitation" was "insufficient to establish a property interest." *Id.* at 334.

■ As an aside, the Court points out that the Plaintiff does possess a property interest in his employment as a tenured professor in the chemistry department at Lamar. However, even when a public employee has a legitimate entitlement to employment, the due process clause only protects the status as an employee, not specific job assignments. *Quives v. Campbell,* 934 F.2d 668, 670–71 (5th Cir.1991).

Therefore, the Court concludes that the Plaintiff cannot demonstrate that he possessed any property interest in either the interim president or the executive vice president positions. Consequently, the Court must also then conclude that the Plaintiff has failed to establish that the Defendants deprived the Plaintiff of his constitutionally protected right to due process.

*Liberty Interest*

■ The last constitutional violation alleged by the Plaintiff is that the Defendants deprived the Plaintiff of a protected liberty interest to be free of false stigmatization in the professional and social community. Ever

since the Supreme Court's decision in *Board of Regents v. Roth,*[3] plaintiffs have brought 42 U.S.C. § 1983 actions predicated on the damage done to one's good name incident to the termination of one's employment. In that case, the Court held that a state's decision to dismiss an employee without notice and hearing under circumstances that seriously damage his reputation might violate the Constitution. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. However, to establish the deprivation of this liberty interest, the Plaintiff must demonstrate that the governmental employer brought false charges that " 'might seriously damage his standing and associations in his community,' or that impose a 'stigma or other disability' that forecloses 'freedom to take advantage of other employment opportunities.' " *Wells v. Hico Independent School District,* 736 F.2d 243, 256 (5th Cir.1984) (citing *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707).

The Plaintiff claims that both the Defendants' publication of the Plaintiff's resignation letter, which included the false statement that he resigned for personal reasons, and the very fact that he suffered a loss of employment stigmatized his reputation. As an initial matter, the Court points out that the Plaintiff must demonstrate that *false* charges caused the stigmatization. This requirement necessarily disqualifies the Plaintiff's claim that the very fact of the loss of employment was stigmatizing. There is nothing false about this charge. Whether the termination was proper or improper, the Plaintiff did indeed lose his position as interim president and executive vice president. In any event, the Supreme Court has made it

clear that loss of employment alone does not constitute a violation of the liberty interest. *See, e.g., Roth,* 408 U.S. at 574 n. 13, 92 S.Ct. at 2707 n. 13.[4]

Thus, only the Plaintiff's claim that the publication of his resignation letter was stigmatizing remains for consideration. In the Court's mind, it is clear that no person could ever find that the stigmatization caused by this letter, if any, is such that it constitutes a violation of the Plaintiff's liberty interest. For any statement to be stigmatizing, "it must be worse than adverse; it must be such that it would give rise to 'a badge of infamy, public scorn, or the like.' " *Wells,* 736 F.2d at 256 n. 16 (quoting *Ball v. Board of Trustees,* 584 F.2d 684, 685 (5th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979)). The Court hardly thinks that much public approbation attaches to a false statement that an individual has resigned for personal reasons. Even if, as the Plaintiff claims, "having to explain why he was allegedly resigning in the middle of the year" (*Response,* p. 13) caused the Plaintiff some embarrassment, the letter of resignation was definitely not an attack on the Plaintiff's morality or integrity. *See Burris v. Willis Independent School District, Inc.,* 713 F.2d 1087, 1091 (5th Cir.1983); *Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir. 1982); *LaBorde v. Franklin Parish School Board,* 510 F.2d 590, 592–93 (5th Cir.1975). Consequently, the Court determines that, as a matter of law, the false statements contained in the Plaintiff's letter of resignation do not constitute a violation of the Plaintiff's liberty interest.[5]

---

**3.** 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**4.** The Plaintiff cites *Wells v. Hico Independent School District* for the proposition that the loss of employment in and of itself can be stigmatizing. However, this case manifestly does not stand for this proposition. Instead, this Fifth Circuit clearly states in this case that "nonrenewal [of an employment contract] was not stigmatizing of itself." *Wells,* 736 F.2d at 258. The Fifth Circuit does state that there is a *"common sense* perception that the loss of one's job can be stigmatizing in itself." *Id.* (emphasis added). But the court goes on further to explain, "[T]he law requires more than mere nonrenewal to find a liberty

deprivation.... For this reason, it is important that a court carefully instruct a jury on the legal requirements necessary for a liberty interest deprivation." *Id.*

**5.** For some reason, the Plaintiff does not claim that the reasons proffered by the Defendants in explaining why they terminated the Plaintiff were stigmatizing. The Defendants claim that they fired the Plaintiff because he (1) jeopardized relations between Lamar and some its largest donors, key faculty members, and state agencies; (2) had difficulty accepting comments and criticisms in a professional manner; (3) appeared insensitive to the financial needs of certain students; and (4) generally appeared overwhelmed

### State Constitutional Violations

The Plaintiff claims that his termination violated his rights guaranteed under article I, §§ 3, 8, 19, and 29 of the Texas Constitution.[6] There is no doubt that the Plaintiff's claims as to article I, §§ 3, 19, and 29 do not state viable causes of action. Neither the Texas Constitution, state statute, nor case law provide plaintiffs with a vehicle to pursue the rights guaranteed by these sections. *See Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.], writ ref'd n.r.e.) ("We acknowledge that Texas has a strong bill of rights, but we can find no Texas statute or case that provides a citizen the kind of redress afforded by 42 U.S.C. § 1983 or by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). There is no state 'constitutional tort' "). Nevertheless, the Plaintiff does possess a viable claim under article I, § 8, which guarantees the right to free speech. Texas courts have concluded that this provision constitutes an independent legal basis for a cause of action. *See Davenport v. Garcia,* 834 S.W.2d 4 (Tex. 1992); *Jones v. Memorial Hospital System,* 746 S.W.2d 891, 893–94 (Tex.App.—Houston [1st Dist.] 1988, no writ). Therefore, the Court grants the Defendants' Motion for Summary Judgment as to the Plaintiff's article I, §§ 3, 19, and 29 claims but denies the motion as to the article I, § 8 claim.

### Remand

The Court's decisions in regard to the instant Motion for Summary Judgment leave only one state law cause of action in this case. A district court has discretion to remand a properly removed case to state court when all federal law claims have been eliminated and only pendant state law claims remain. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *Jones v. Roadway Express, Inc.,* 936 F.2d 789, 792 (5th Cir.1991). In reaching this decision, the district court should examine "the values of judicial economy, convenience, fairness, and comity." *Cohill,* 484 U.S. at 357, 108 S.Ct. at 622–23. In light of these factors, this Court concludes that the instant case should be remanded to the 60th Judicial District Court of Jefferson County, Texas.

The independent cause of action contained in article I, § 8 was only recently discovered by the Texas courts. This Court feels that the Texas judicial system is the more appropriate forum in which the contours of this new claim can be explored and defined. Moreover, considering the fact that this Court is actually a Southern District of Texas forum sitting by special designation in the Eastern District, remanding this case to Jefferson County advances the values of judicial economy and convenience.

### Conclusion

In light of the foregoing, the Court GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment. The Court GRANTS this motion as to the Plaintiff's federal constitutional claims and the article I, §§ 3, 19, and 29 claims, but DENIES the motion as to the article I, § 8 claim. However, the Court REMANDS this remaining cause of action to the 60th Judicial District Court of Jefferson County, Texas. The Court also ORDERS the parties to file nothing further concerning this case in this Court. ALL FURTHER FEDERAL RELIEF MUST BE SOUGHT FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, to the extent any decision reached herein is properly appealable.

IT IS SO ORDERED.

---

by his job responsibilities. However, even if the Plaintiff had claimed that these charges were stigmatizing, the Court would still grant summary judgment on this issue. Like the false statement contained in the Plaintiff's resignation, the Court has difficulty in ascertaining how these charges stigmatized the Plaintiff in a manner that constitutes a constitutional violation. While all of these charges are unflattering, and absolutely inexcusable if false, they are hardly in line with the false charges made in other cases finding violations of the liberty interest.

**6.** Section 3 is the Texas equal rights amendment, section 8 is the Texas free speech amendment, section 19 is the Texas due process amendment, and section 29 exempts the Texas Bill of Rights from the powers of government.