Robert GONZALES

v.

GALVESTON INDEPENDENT SCHOOL DISTRICT, James Pickett, Individually and in his Official Capacity; Henry Boening, in his Official Capacity; J.T. Tucker, in his Official Capacity; Neal N. Nathan, in his Official Capacity; Ann Simmons, in her Official Capacity; Ernest Barratt, in his Official Capacity; Izola E. Collins, in her Official Capacity; Michael M. Warren, in his Official Capacity; Bernard Dumbrow, in his Official Capacity.

Civ.A. No. G–94–039.

United States District Court, S.D. Texas, Galveston Division.

Oct. 4, 1994.

**1244**

Laurence W. Watts, Watts & Glover, Houston, TX, for plaintiff.

Edward H. Schwab, III, Galveston, TX, David M. Feldman, Feldman & Rosenberg, Houston, TX, for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Robert Gonzales brought this employment discrimination suit against the Galveston Independent School District ("GISD") and the individual Defendants, pleading deprivation of a property right in continued employment under the constitutions of both the United States and the State of Texas; deprivation of a liberty interest in being free from retaliation and false stigmatization for exercising free speech rights; denial of Fourteenth Amendment Equal Protection rights; and violation of the Texas "Whistleblower" statute, Tex.Gov't. Code Ann. § 554.001 *et seq.* (Vernon 1994). All federal claims were brought pursuant to 42 U.S.C. § 1983. Before the Court now are the Defendants' Motion for Summary Judgment, arguing that the Plaintiff has failed to show that he was discharged for constitutionally prohibited reasons and that the individual Defendants are not subject to suit under the doctrine of qualified immunity. The Defendants' motion is **GRANTED** as to all claims arising from federal statute or the United States Constitu-

tion. All remaining state-law claims in this case are hereby **REMANDED** to the 212th Judicial District Court of Galveston County, Texas.[1]

### I. Background

Plaintiff Robert Gonzales was employed by GISD in 1984 to do carpentry and finishing work for the District. At some point thereafter,[2] the Attorney General approached Gonzales and other employees of GISD concerning the conduct of Gonzales' supervisor, Joseph Parker, who was subsequently fired in 1985 by the District for self-dealing, corruption, and theft. Parker was later convicted of state-law crimes.

In 1987 the District's Board of Supervisors decided to "privatize" GISD's maintenance department. As a result, it contracted with Service Master, a private vendor and supplier of services, to supervise that department and to undertake duties formerly carried out by Joseph Parker. When a new carpentry position with higher pay became available, Service Master hired an employee who had not previously worked for the District, and Plaintiff Gonzales began to communicate his unhappiness over this hiring with Defendant Izola Collins, a GISD Board member.[3] The Plaintiff also complained to Defendant Pickett, one of Gonzales' supervisors,[4] concerning

1. This suit was originally filed in the 212th Judicial Court for Galveston County on January 2, 1988. Plaintiff's suit was dismissed with prejudice for failure to replead in accordance with the Defendants' Special Exceptions. On March 11, 1993, this dismissal was reversed and remanded by the 14th Court of Appeals for the State of Texas. Plaintiff then filed a Third Amended Petition on December 17, 1993, and the case was removed to this Court on January 14, 1994.

2. The Court's recital of the background facts of this case is hampered by the murky and incomplete statement of those facts in the pleadings and motions in this suit. What follows is the Court's best effort to create a coherent narrative out of the fragmentary presentation of the facts which has been presented to it by the parties.

3. Again, the Court is uncertain about the chronology of these events. In his unclear, loosely organized complaint, Plaintiff claims that these communications began after Parker was fired and that they specifically contained references to

Service Master's hiring policy. (Plaintiff's Third Amended Complaint, Instrument # 1, at 7). Unfortunately, this collapses a two-year time period into what appears to be a very short time frame: Parker was fired in 1985, and the new carpentry position became available in 1987. The Court assumes that the Plaintiff's complaints to Defendant Collins occurred in 1987 after he was passed over for the specific carpentry position he mentions.

4. The pleadings and motions before this Court contain references to at least three men as the Plaintiff's "supervisor": Defendants Pickett and Tucker, and one non-defendant, Bertolino. After expending an unwarranted amount of its valuable time trying to clarify the hierarchy of these men and their precise relationship to the Plaintiff, the Court surmises that Defendant Pickett was Plaintiff's head supervisor within the District itself, and that Defendant Tucker was Plaintiff's supervisor within the Service Master organization. Bertolino's relationship to the Plaintiff remains wholly obscure to this Court.

what the Plaintiff believed was a hiring pattern of "arbitrary practices and blatant favoritism" first begun by Joseph Parker and now continued by Service Master. (Plaintiff's Third Amended Complaint, Instrument # 1, at 5). These complaints were submitted to Defendant Pickett in writing, and Pickett responded to them several weeks later.

According to Plaintiff Gonzales, Defendants Boening, Tucker, Nathan, Dumbrow, Simmons, Barratt, Collins, and Warren began to display "arrogance and contempt" toward him "because of his menial role in GISD relative to their own self-imagined importance." (See id. at 8). Fearing that his work would be criticized, Plaintiff Gonzales began taking photographs of his work. Defendant Tucker "retaliated" by taking his own photographs of the Plaintiff, pictures that Tucker claims were designed to add a personal touch to a report he was compiling about the work crew to which the Plaintiff belonged. Gonzales (who claims to be "an extremely large person and is, as some of us are, sensitive about his size," see id. at 9) objected to this behavior by Tucker and told him that if he did not stop taking pictures of him, Gonzales would "shove the camera up [Tucker's] rear." [5]

As a result of this incident, Tucker sent the Plaintiff to Supervisor Pickett's office, where Pickett asked the Plaintiff if he had actually threatened to do such an act with Tucker's camera. The Plaintiff readily admitted that he had. (See Plaintiff's Deposition, at 24). Pickett then told the Plaintiff that under the circumstances he had no option other than to place him on immediate suspension pending an investigation. (See Pickett's Deposition, at 35). On October 9, 1987, the Plaintiff was interviewed by Defendant Henry Boening, GISD's Assistant Superintendent for Business, who terminated Gonzales. The Plaintiff subsequently requested and received a hearing before the GISD Board of Trustees to complain of his termination. The Board allowed the termi-

nation to stand, and Gonzales subsequently brought suit in state court.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. Anderson v. Liberty Lobby, supra, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. Matsushita, supra, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; Leonard v. Dixie Well Serv. & Supply, Inc., 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more

---

**5.** These words seem to have been sanitized for the Court's protection, and Gonzales' actual language, quite believably, seems to have been somewhat more colorful than that stated in the pleadings. (See Plaintiff's Response to Defendant's Motion for Summary Judgment, Instru-

ment # 8, at 7). The distinction is important in this case because Gonzales' discharge occurred because of the precise nature and, presumably, the tone of his comment to his supervisor, Tucker.

than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial." Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

## III. Analysis

As an initial matter, the Court notes with considerable irritation that the miasmic pleadings in this suit have completely failed to identify to the Court precisely *who* most of the individual Defendants being sued are, what relation they have to the Plaintiff, or what actions they have taken that would make them subject to suit. Plaintiff's Third Amended Complaint, for example, fails to make even the most rudimentary identification of Defendants Nathan, Dumbrow, Simmons, Barratt, or Warren. The Court has been able to ascertain that Annie Simmons and Izola Collins are members of the GISD Board only by carefully reading the lengthy depositions submitted by the parties, and it assumes that the other unidentified Defendants named above are also members of the Board. With this limitation in mind, the Court makes the following analysis of the issues presented in this case.

### 1. The Equal Protection Claim

■ In his Third Amended Complaint, Plaintiff Gonzales states the following cause of action: "Plaintiff's reporting to the District Attorney's Office and/or Pickett and/or Boening, the violation of district policies ... constituted ... a violation of applicable State and Federal constitutional provisions, including the denial of 'equal protection' guarantees." (Plaintiff's Third Amended Com-

plaint, Instrument #1, at 12). Obviously, this cause of action is absurd on its face. Plaintiff's Equal Protection Clause rights cannot be violated simply because he chose to complain to GISD officials and the District Attorney about actions he believed to be improper; to claim otherwise would be to equate the exercise of First Amendment free speech rights with a violation of the Fourteenth Amendment. What Plaintiff Gonzales *seems* to be asserting by this cause of action is that he was discriminated against by GISD and its Board because of his race or national origin when he was allegedly discharged for making these complaints.

Even read in this liberal manner, however, the Plaintiff's claim is frivolous and utterly without merit. In a deposition on his EEOC complaint in this matter, Plaintiff clearly states that he was *not* discriminated against on racial or national origin grounds:

Q: Now, Mr. Gonzales, this complaint that you filed indicated that you felt your civil rights had been violated; because you were retaliated against; and because of your national origin, because of the fact that you were a Hispanic; is that right?

A: Okay. I didn't say that. They did. I felt I was retaliated against, yes; but they put as to why....

Q: Well, them, [sic] sir, we can clear the air. You're not claiming that you were discharged because of your national origin, are you?

A: No, sir, not all. [sic] I never did claim that.

(Defendant's Motion for Summary Judgment, Instrument #5, at 12). By his own admission, therefore, Plaintiff Gonzales was not retaliated against on any ground protected by the Equal Protection Clause, and the Court can discern in Plaintiff's complaint no other possible ground for such a cause of action.[6] Gonzales' Equal Protection Clause claims are thus **DISMISSED** as groundless.

---

**6.** It is possible that Gonzales intends his equal protection claim to mean that he was discriminated *against as a GISD employee when Service Master hired its new employee from outside the ranks of GISD. Plaintiff complains of this fact at several points in his pleadings and his Reply to Defendants' Motion for Summary Judgment. Yet, even after the Defendant argued in their

Motion for Summary Judgment that the Plaintiff was not discriminated against on grounds of race or national origin, the Plaintiff failed to make any objection or to assert any more specific argument on his equal protection claim. Thus, the Court assumes that if the Plaintiff had some other theory he intended to rely on it would have been specifically raised at some point.

### 2. Deprivation of Liberty Interest

Plaintiff Gonzales makes two claims under the heading of a deprivation of a liberty interest. The first such claim—an interest in not being retaliated against for reporting inappropriate employment practices—is more properly brought under the Plaintiff's free speech claims, and the Court will consider the merits of Gonzales' claims at that point. Secondly, Plaintiff claims he has a liberty interest in not being falsely stigmatized as a violent person. While the Plaintiff does not make any specific argument or present any authority to this Court to support such a claim, the Court notes that the Fifth Circuit has, indeed, recognized a liberty interest protected by the due process clause that encompasses a person's right to work and to earn a living. *Wells v. Doland,* 711 F.2d 670 (5th Cir.1983). The Supreme Court has also stated that when a public employer discharges an employee and makes charges against him that might damage his standing in the community, the employee's liberty interest may be involved. In that case, the employee must receive an adequate hearing to clear his name. *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 207–08, 33 L.Ed.2d 548 (1972). Nevertheless, the Court finds that even when all the facts in this case are viewed in the light most favorable to the nonmovant Plaintiff, no deprivation of this liberty interest has occurred as a matter of law.

To establish such a deprivation under the Fourteenth Amendment, a plaintiff must show three things: (1) that he has, in fact, been stigmatized as a result of the discharge process; (2) that the charges were made public; and (3) that he was denied a meaningful hearing to clear his name. *Wells, supra,* 711 F.2d at 676; *see also In re Selcraig,* 705 F.2d 789, 795–96 (5th Cir.1983); *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 341 (5th Cir. 1978); *Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir.1975). Based on this test, the Court has no difficulty in deciding that Plaintiff Gonzales has not been deprived of a liberty interest.

The Plaintiff in this case has presented no evidence that he has been stigmatized by his discharge in such a way that other employment opportunities have been precluded or that his reputation in the community has been damaged. In fact, despite his ominous-sounding allegation that the Defendants have hidden facts from this Court (see Plaintiff's Response, Instrument # 8, at 12), the evidence is quite clear that it is the Plaintiff who has failed to mention to the Court that he has continued to enjoy other employment since his discharge from GISD. At deposition, for example, Plaintiff openly admitted that he "work[ed] for a lot of school teachers ... they call me to do work at their homes." (Defendants' Reply, Instrument # 10, at 8). Thus, if the Plaintiff could find employment from GISD teachers—employees of the very Board that he claims falsely stigmatized him—the Court finds it incredible Plaintiff has, in fact, been stigmatized at all in the community.

Yet, assuming *arguendo* that such stigmatization has occurred, the Plaintiff clearly fails the second and third tests announced in *Wells.* No evidence in this case even suggests that GISD or any Board member made public the charge that Plaintiff Gonzales is a violent person or even publicly announced the *fact* that he threatened to shove Defendant Tucker's camera "up [Tucker's] rear." The Circuit has been very clear that "infringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner, other than in connection with the defense of [related legal] action." *Ortwein, supra,* 511 F.2d at 699. In this case, no evidence has been presented that suggests that the Board ever publicly discussed the charges that led to Gonzales' discharge or that these reasons were ever mentioned outside the Board hearing at which the Plaintiff presented his case.

Most crucially, however, the Plaintiff fails the third test of *Wells* because he himself admits that he was given the opportunity to defend himself and to dispute his discharge at a post-termination hearing before the Board. (See Plaintiff's Reply, Instrument # 8, at 9). Although the Court has no evidence before it as to the nature or

scope of this interview, Plaintiff nowhere presents any evidence suggesting that it was either inadequate or deficient in such a way that would call into question whether he received his proper due process rights. Thus, the Court concludes that Plaintiff Gonzales has not shown that he failed to receive a meaningful hearing to clear his name and that his claim to a deprivation of a liberty interest is without merit.[7] This claim is, therefore, similarly **DISMISSED.**

### 3. Property Interest

■ The Plaintiff also claims that the Defendants have violated his Fourteenth Amendment rights by depriving him of his property rights in continued employment as a maintenance worker for GISD. It has been an elementary requirement in employment law for almost two decades that in order to bring such a claim, a plaintiff must clearly establish the existence of a property interest. *Bishop v. Wood,* 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976); *Brown v. Texas A & M University,* 804 F.2d 327 (5th Cir.1986). The Circuit has been very clear that to demonstrate a constitutionally protected property interest, a plaintiff must "allege with specificity the particular state rule, regulation, law or understanding between the parties giving rise to the requirement of just cause prior to termination." *Brown, supra,* 804 F.2d at 334. Mere conclusory allegations that one has

been deprived of a property interest in continued employment is insufficient to establish the existence of a constitutionally protected interest. *Id.* [8]

■ The Court believes that this case clearly falls under the *Brown* holding. Plaintiff Gonzales' only allegation of his supposed property interest occurs under the heading of "Facts" in his Third Amended Complaint, where he states that he was employed by GISD under a policy holding that "[p]laintiff would not be disciplined or negatively affected in his employment except upon the establishment of 'good cause.'" (Plaintiff's Third Amended Complaint, Instrument # 1, at 2). No deposition, affidavit, or other form of evidence has been submitted in this case that shows any agreement existed between the parties that Gonzales would be discharged only for "just cause," and the Plaintiff has directed the Court's attention to no state or federal law indicating that he had a vested property right in continued employment.

■ Thus, Plaintiff has wholly failed to overcome the Texas state law presumption that all employees are "at will" until shown otherwise. *See Sabine Pilot Service v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985). In addition, Plaintiff's case authority for his claim is almost absurdly off-point. Plaintiff argues that Texas law recognizes that the right to earn a living is a property interest protected by the Fourteenth Amendment.

7. The Court also notes that inherent in the stigmatization issue at stake here is the requirement that the alleged charges be *false. Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). In this case, even the Plaintiff admits that he made the statement that led to his discharge, so even if a stigma did attach to him, it does not constitute the deprivation of a liberty interest.

Although the Plaintiff nowhere directly argues this point in relation to the stigmatization claim, the Court also notes for the sake of completeness that there is a genuine dispute in this case as to whether Mr. Gonzales physically touched Mr. Tucker in a threatening way during their confrontation over the camera. (See Plaintiff's Reply, Instrument # 8, at 8). It is possible that in his rather obscurely argued case, the Plaintiff intends his claim of being stigmatized as "violent" to refer to this disputed fact. However, there is no evidence in this case that the GISD Board was ever aware that such a dispute existed

or that any individual Defendant has ever publically labelled Gonzales as "violent." Indeed, there is not one piece of evidence in this case that suggests that Gonzales has ever been stigmatized at all.

8. Typically, the Plaintiff in this case has failed to inform this Court what provision of the Fourteenth Amendment his claim invokes, so the Court assumes that the Plaintiff is claiming that his discharge violates the Due Process Clause. The Fifth Circuit requires three things to be alleged with particularity in order to bring such a claim: "(i) the state or federal law or understanding giving rise to the property interest; (ii) the particular process that plaintiff was entitled to and failed to receive; and (iii) that the official's failure to provide these particular processes violated 'clearly established constitutional law' at the time of the alleged infraction." *Brown, supra,* 804 F.2d at 333. Clearly, the Plaintiff has utterly failed to allege any one of these three requirements.

*See Smith v. Decker,* 158 Tex. 416, 312 S.W.2d 632, 633–34 (1958). While the Texas Supreme Court did state that proposition in *Smith,* it invoked the *Slaughterhouse Cases,* 83 U.S. (16 Wall) 36, 21 L.Ed. 394 (1873), to argue that a state legislature could not deprive an individual of his ability to earn a living by a mere mandate without violating the Fourteenth Amendment. However, the general right to earn a living is patently *not* the same thing as a property right to continued employment in a specific job in a state with a strong presumption of "at will" employment. On the contrary, it is a fundamental principle of constitutional law that "[i]f the individual employee has not been granted a term of guaranteed employment, absent removal for just cause, he will have no property right or entitlement to continued employment in that position." Nowak, Rotunda & Young, Constitutional Law (3rd ed. 1986). As stated above, the Texas Supreme Court has been unfailingly clear that employment in this state is assumed to be "at will" unless otherwise shown. *Sabine Pilot, supra,* 687 S.W.2d at 735.[9] The Plaintiff's property right claim is, therefore, **DISMISSED** as being without merit as a matter of law.

### 4. Free Speech

Finally, Plaintiff complains that he was deprived of a liberty interest in freedom from retaliation for exercising his free speech rights on matters of public concern. Specifically, Plaintiff claims that his conversations with the District Attorney about Parker's behavior, as well as his complaints to Defendant Pickett and his request to meet with the Board of Trustees, are protected acts of free speech and that his discharge from GISD was substantially motivated by these instances of free speech. (See Plaintiff's Third Amended Petition, Instrument # 1, at 10–11).

It is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Page v. Delaune,* 837 F.2d 233, 237 (5th Cir.1988). In order for a public employee to demonstrate a deprivation of free speech, the employee must show that:

1. the speech addresses a matter of public concern;

2. the employee's interest in communicating upon matters of public concern outweighs the defendant's interest in promoting the efficiency of the public service they [sic] perform; and

3. the employee's discipline was motivated by the uttered speech.

*Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir.1990).

The Supreme Court has clearly stated that in order to determine whether a speech addresses a matter of public concern depends on "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). In making this decision, the Court must decide whether the speech in question was made primarily in the plaintiff's role as a citizen or primarily in his role as an employee; any speech that is made in the role of an employee cannot be a matter of public concern. *Ayoub v. Texas A & M University,* 927 F.2d 834, 837 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991). However, the fact that a statement was made through private rather than public

---

9. This Court is aware that the Circuit has stated under almost identical facts in *Brown* that the liberal pleading rules of the Federal Rules of Civil Procedure mandate excusing mere artless drafting in order to allow a plaintiff to replead where a cognizable case for a property right in employment might be present:

"Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,' we must remand to permit plaintiff to amend his claim if he can do so."

*Brown, supra,* 804 F.2d at 334 (quoting *Jacquez v. Procunier,* 801 F.2d 789, 791 (1986). In this case, the Court—much to its displeasure—has indeed searched every nook of this record only to find itself starved for any evidence that suggests a cognizable claim for a property interest in continued employment. In addition, the Plaintiff has already been allowed two amended pleadings in state court.

channels does not preclude a finding that it touched on a matter of public concern. *Brown, supra,* 804 F.2d at 337 ("[t]he fact the speech was delivered privately . . . rather than to Bob Woodward and Carl Bernstein, does not necessarily render the speech any less protected.").

■ The Court finds that in this case the Plaintiff's speech does relate to a matter of public concern and that his interest in communicating these matters outweighs the Defendants' interest in promoting the efficiency of public service.[10] The Plaintiff's conversations with the District Attorney concerning Joseph Parker's activities in GISD clearly touched on a matter of public concern: the District Attorney is a public official who was engaged at the time in investigating illegal behavior by Parker. Furthermore, if taken as true, Plaintiff's claim that his complaints to Pickett (and presumably to the Board itself) concerned the continuation of practices and policies first implemented by Joseph Parker *could* raise issues of potential misconduct within GISD and implicate matters of public concern. (See Plaintiff's Third Amended Petition, Instrument #1, at 7; Plaintiff's Reply, Instrument #8, at 3–4). This Court has written that the spectre of misconduct affects the public's confidence in its institutions, including the operation of this Court, and that its "desire to have all manner of illegal and unethical behavior exposed and punished forces the Court to conclude that only matters of national security and the like should ever prevent a public employee from revealing or generally objecting to improper public practices." *Idoux v. Lamar University System,* 828 F.Supp. 1252, 1258 (S.D.Tex. 1993) (Kent, J.). While it is true that the Plaintiff made his complaints out of a personal grievance in having been passed over for promotion, the Court must accept the nonmovant's evidence and draw all inferences in his favor for the purposes of summary judgment. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. On this basis, therefore, the Court is not willing to find that the first two prongs of the *Thompson* test have not been met by the Plaintiff in this case.

■ Nevertheless, the Plaintiff has presented no evidence to this Court to suggest that any material issue of fact exists that the exercise of his free speech rights was a substantial or motivating cause for his discharge. The question of whether an employee's termination has been motivated by an impermissible reason is determined by the burden-shifting provisions of *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under that test, the Plaintiff has the initial burden of showing that his conduct was a protected activity and formed a substantial or motivating factor in the Defendants' actions toward him. *Id.* at 287, 97 S.Ct. at 576. Once this is demonstrated, the burden shifts back to the Defendant to show by a preponderance of the evidence that it would have made the same decision or undertaken the same action in relation to the Plaintiff even in the absence of the protected conduct. *Id.*

■ Ordinarily, "[w]hether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact . . . rendering summary disposition inappropriate." *Click v. Copeland,* 970 F.2d 106, 113 (5th Cir.1992); *Brawner v. City of Richardson, Tex.,* 855 F.2d 187, 193 (5th Cir.1988). This is true because in making such a determination, a trial court would usually be called on to engage in an impermissible weighing of the conflicting evidence of affidavits, depositions, and other summary judgment evidence.

■ In this case, however, the Plaintiff has presented *no* evidence indicating that his discharge was even partially motivated by the exercise of his free-speech rights. It is an undisputed fact in this case that Plaintiff verbally threatened Supervisor Tucker. The precise nature of this crucial confrontation

---

**10.** The Court recognizes that deciding whether the exercise of free speech touches on a matter of public concern is not a clear-cut process and has posed multiple problems for courts. *See* Stephen Allred, *From Connick to Confusion: The Struggle to Define Speech on Matters of Public Concern,* 64 Ind.L.J. 43 (1988) (arguing that no bright line exists in determining what constitutes a public concern in employee free speech issues).

reveals both a threat of retaliation against Tucker as well as the threat of physical violence against him with his camera. Speaking in a deposition, Tucker states:

> Q: And all you [Tucker] did was go and take a souvenir photo for your report and here he [Plaintiff] reacts, he's running out the door at you and he's yelling at you, "You think you're a smart ass," or something like that?
>
> A: That's correct.
>
> Q: And what did you say, "Robert [Plaintiff], what are you talking about," something like that?
>
> A: No. I was kind of appalled, and I just looked and listened. And he continued. He told me, he says, *"We're going to get you."* He says, "You lied to the board; and he said, *"We're going to get you fired."*
> . . . .
>
> *He was continuing to threaten me, that he was going to take the camera away from me and shove it up my ass . . . .*

(Tucker's Deposition, Plaintiff's Reply, at 38) (emphasis added).

The Defendants argue that this encounter constituted insubordination and provided grounds for Plaintiff's discharge. Plaintiff, however, makes much of the fact that there is a genuine dispute in this case as to whether the Plaintiff physically assaulted Tucker after threatening him with the camera.[11] Plaintiff's (unstated) argument is apparently that in the absence of a physical touching, GISD had no cause for terminating Plaintiff and thus its only reason for doing so must have been out of retaliation over Plaintiff's complaints about GISD's hiring policy.

■ The Court finds such an argument completely unconvincing. First, Plaintiff's theory rests on the assumption that the Plaintiff was not an "at will" employee and could be discharged only for "just cause." As stated earlier, however, no evidence has been produced in this case to overcome the presumption that Gonzales, like most employees in Texas, was hired "at will" and could be fired for good cause or for no cause at all. *See Sabine Pilot, supra,* 687 S.W.2d at 734. Secondly, even if the Court assumes *arguendo* that Plaintiff was *not* an "at will" employee, the issue of whether Plaintiff physically attacked Tucker is irrelevant to Plaintiff's § 1983 claim and does not constitute a genuine issue of material fact for summary judgment purposes. A § 1983 claim of retaliatory discharge must be based on evidence that an employee's exercise of constitutionally protected free speech rights formed a substantial motivation for his termination. *Thompson, supra,* 901 F.2d at 460. If Gonzales was improperly fired because he did not physically attack Tucker, he may well have a claim against GISD under Texas state law, but this does not constitute grounds for a § 1983 claim of retaliatory discharge.

In fact, the undisputed evidence in this case shows that Defendant GISD and the individual GISD Board members never even knew there was an allegation of physical violence between Plaintiff and Tucker. (See Deposition of Izola Collins, Plaintiff's Reply, Instrument # 8). As for the remaining Defendants, Plaintiff himself admits that Defendant Boening "recommended that Plaintiff be terminated because he, according to Boening's recommendation to Pickett, had 'violated working guidelines for maintenance and operations employees No. 20, Items D., insubordination, and H., fighting in an attempt to injure another person.'" (Plaintiff's Reply, Instrument # 8, at 8). Even if the Court assumes that Boening made this recommendation knowing that no such violence had occurred, there is still *no* evidence that Plaintiff's discharge was substantially motivated by his constitutionally protected exercise of free speech. This Court is required to draw all inferences in the nonmovant's favor, but it is not required to dream up possible motivations in the absence of *any* evidence suggesting an impermissible basis for firing.[12] In

---

11. The Court notes that the physical touching in question here involved Tucker, who weighs well over 200 pounds, having his stomach "bumped" by the heavier Plaintiff's (apparently much more ample) stomach. Witness Bertolino, who was present during this confrontation, has stated in his deposition that no such "bumping" occurred. (See Bertolino's Deposition, Plaintiff's Reply).

12. The Court notes in this context that Plaintiff's allegation that he was fired for helping the District Attorney to prosecute Parker is particularly

the face of Plaintiff's threat to shove Tucker's camera "up [Tucker's] rear," and in the complete absence of any evidence suggesting otherwise, this Court finds as a matter of law that the Defendants were not substantially motivated by a constitutionally impermissible motivation in firing Plaintiff Gonzales. This claim is also **DISMISSED.**

### 5. Qualified Immunity

The individual Defendants in this case argue that they should not be subjected to suit in their individual capacities because they are protected by the doctrine of qualified immunity. Having decided the case on other grounds, the Court need not reach this issue and would not ordinarily comment further on the defense raised by the Defendants. However, the special circumstances of this case lead the Court to make some concluding comments on the arguments and motions that have been submitted to it. The Plaintiff's failure to identify most of the Defendants he has chosen to sue has already been discussed. But the Defendants have also been remarkably lackadaisical in failing to ascertain the precise nature of the claims made against them and have consequently presented arguments to this Court that are irrelevant. In his Third Amended Complaint, the Plaintiff explicitly states that only Defendant Pickett is being sued both individually and in his official capacity; Defendants Boening, Tucker, Nathan, Dumbrow, Simmons, Barratt, Collins, and Warren are sued *only* in their official capacities. (See Plaintiff's Third Amended Complaint, Instrument #1, at 2). Nevertheless, Defendants have submitted motions to this Court under the assumption that all the individual Defendants in this case are being sued both individually and in their official capacities.[13] As a result, they have also submitted arguments claiming that the individual Defendants are immune from suit in their individual capacities under the doctrine of qualified immunity.

It is an elementary principle of employment-discrimination law that the doctrine of qualified immunity is designed to protect a public official from liability in his or her individual capacity where the official's conduct concerns the performance of discretionary functions and does not violate clearly established statutory or constitutional rights which a reasonable person would know of. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity only protects officials from personal liability, and it is thus inapplicable where officials are sued in their official capacity. *Harvey v. Blake,* 913 F.2d 226 (5th Cir.1990). Because no Defendant is being sued in his or her individual capacity in this case, Defendants' arguments on this issue are moot, and the doctrine of qualified immunity has no relation to the claims made against any individual Defendant other than James Pickett.

### 6. Texas Law Claims

Plaintiff Gonzales also claims that his discharge violates his rights guaranteed by article I, §§ 8, 19, and 29 of the Texas State Constitution. Having denied all of Plaintiff's federal claims, this Court has supplemental jurisdiction to decide the remaining state-law claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). Under § 1367, however, a federal trial court may decline to exercise its supplemental jurisdiction when it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Trial courts are granted wide discretion to remand the remaining state-law claims. 28 U.S.C. § 1367 Practice Commentary (West Supp.1993).

The Defendants' vigorous rebuttal of Plaintiff's case authority on this issue indicates to the Court that a potential conflict in the state courts has arisen as to whether the Texas Constitution provides a private cause of action for damages. *See City of Beaumont v.*

meritless. His conversation with the District Attorney apparently occurred well over a year prior to Plaintiff's discharge, and no evidence has been presented suggesting that any of the other GISD employees who spoke with the District Attorney—all at the DA's request—suffered any consequences from their conversations.

13. All documents submitted by the Defendants to this Court contain case headings listing the individual Defendants as being sued "individually and in his/her official capacity."

*Bouillion,* 873 S.W.2d 425 (Tex.App.—Beaumont 1993, writ granted); *Font v. Carr,* 867 S.W.2d 873 (Tex.App.—Houston [1st Dist.] 1993, no writ). *City of Beaumont,* the one appellate case that directly holds that a compensatory cause of action is implied by the Texas bill of rights, is currently pending before the Texas Supreme Court. Although this Court seriously doubts that the Plaintiff has stated a cognizable claim under either § 19 or § 29, it is mindful that Texas courts have special expertise in applying state law. In particular, article 1, § 8, which guarantees the right to free speech, constitutes an independent legal basis for a cause of action, and Texas courts have held that § 8 is not limited to the same tests used in analyzing free speech claims arising under the First Amendment. *City of Beaumont, supra,* 873 S.W.2d at 442. In addition, the state law governing the Defendants' claim of qualified immunity is different from federal law. *See Font,* 867 S.W.2d at 878.

The Fifth Circuit has recently ruled under almost identical circumstances that when all federal claims have been dismissed in a case, unsettled issues concerning the Texas Constitution should be remanded to the state court. *Idoux v. Lamar Univ. System, et al.,* No. 93–5163 (5th Circuit Sept. 28, 1994). In *Idoux,* the Circuit remanded claims under article I, §§ 3, 19, and 29 to the Texas state court. Thus, this Court hereby remands the remaining state-law claims to state court under the advice set forth by the Supreme Court in *United Mine Workers of America v. Gibbs:* "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### IV. Conclusion

For the reasons stated above, Plaintiff Gonzales cannot recover against any of the Defendants in this case under any of his federal claims pursuant to § 1983. Thus, the Defendants' Motion for Summary Judgment is hereby **GRANTED** as to all of the Plaintiff's claims arising out of federal statutes or the United States Constitution, and all such claims are **DISMISSED WITH PREJUDICE.** The Court declines to exercise jurisdiction over Plaintiff's remaining state-law causes of actions, which are hereby **REMANDED** to the 212th Judicial District Court of Galveston County, Texas, where this case was originally brought. Furthermore, all other relief not specifically granted herein is **DENIED.** All parties are to bear their own costs. It is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**