**Dissenting Opinion from the Denial of Motion for En Banc Reconsideration filed June 13, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00100-CV

---

### DENISE LONGORIA, Appellant

### V.

### CKR PROPERTY MANAGEMENT, LLC, Appellee

---

### On Appeal from the 270th District Court
### Harris County, Texas
### Trial Court Cause No. 2017-72827

---

**Dissenting on denial of motion for en banc reconsideration**

I respectfully dissent from the court's denial of appellee CKR Property Management, LLC (CKR)'s motion for en banc reconsideration. The panel should have affirmed the trial court's ruling denying Longoria's motion to compel arbitration.

Much like the case of *Utility Trailer Sales Southeast Tex., Inc. v. Lozano*,[1] this

---

[1] No. 04-16-00644-CV, 2017 WL 3045861, at *1 (Tex. App.—San Antonio July 19, 2017, pet. denied) (mem. op.).

case involves duration and survivability of an at-will employment arbitration agreement that is as indefinite in term as the employment which it claims as consideration. While this case should have resolved on the express language of the agreement, the panel conflated broad scope language with indefinite intent. Doing so results in an erosion of the Texas general rule and an interpretation not intended or contemplated by the parties, resulting in an unconscionable agreement approaching lifelong servitude.

Finally, I will also address the unique procedural aspects of this case and how it prevented the panel from full consideration such that it now warrants en banc reconsideration.

## BACKGROUND

CKR Property, which manages multi-family residential apartment complexes, hired appellant Denise Longoria in June 2015 to fulfill operations at multiple properties. Before beginning her employment at CKR Property, Longoria signed an arbitration agreement entitled "Acknowledgement of Receipt of Arbitration Agreement." The arbitration agreement appears as a stand-alone document as follows:

> Denise N. Longoria and CKR Property Management agree that they prefer and choose to arbitrate any dispute they may have instead of litigating in court before a judge or jury. Therefore, they agree that any claim or dispute between them or against the other or any agent or employee of the other, whether related to the employment relationship or otherwise, including those created by practice, common law, court decision, or statute now existing or created later, including any related to allegations of violations of state or federal statutes related to discrimination, and all disputes about the validity of this arbitration clause, shall be resolved by final binding arbitration by the American Arbitration Association, under the National Rules for the Resolution of Employment Disputes. CKR Property Management agrees to pay all costs of the arbitration, except in that [sic] each party will bear their own legal fees. Fees paid are subject to the award of fees by the arbitrator, as provided by law and arbitration rules. This agreement

2

shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-6, and any award of the arbitrator(s) may be entered as a judgment in any court of competent Jurisdiction. In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of this agreement shall remain effective. The parties agree that any dispute shall be held in Montgomery, Alabama. By signing this agreement, the parties agree not to sue each other in court and have their case decided by the judge or jury.

Longoria signed the agreement and dated it June 15, 2015. The record does not contain any other documents Longoria signed before beginning her first employment period. However, both parties agree and stipulate, "there is no dispute that [the arbitration agreement] was executed incident to her employment"[2]. Longoria resigned from CKR Property in June 2016.

CKR Property rehired Longoria to a different title as "Supervisor in Charge" in April 2017. On the same day, before beginning her second period of employment, Longoria signed a "Confidentiality and Non-Competition Agreement." This second agreement does not contain any provisions addressing either (1) the previously signed arbitration agreement; or (2) the arbitrability of claims arising under the non-compete agreement. Longoria did not sign a separate arbitration agreement before beginning her second employment. CKR Property terminated Longoria's employment six months later.

CKR Property sued Longoria in October 2017, asserting claims arising from Longoria's alleged breach of the non-compete agreement. Longoria filed a general denial and asserted affirmative defenses.

---

[2] TRIAL COURT: I'm still having a little bit of conceptual trouble of the idea that that agreement would continue forever, even though she's separated from employment because there's no dispute that it was executed incident to her employment with these folks, is there?

LONGORIA: There is no dispute.

3

Longoria filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"). *See generally* 9 U.S.C.A. §§ 1-16 (West 2009). CKR Property responded and the trial court held a hearing on the motion. The trial court signed an order on January 30, 2018, denying Longoria's motion to compel arbitration. Longoria timely appealed.

Oral Arguments were heard on October 17, 2018, before a panel of three Justices. On December 21, 2018, the three justices issued and published Majority and Concurring Opinions to reverse and remand the case to compel arbitration under the arbitration agreement. On January 1, 2019, two of the three justices on the panel were no longer available on the court.[3]

On February 11, 2019, CKR filed a motion for en banc reconsideration.

## ANALYSIS

*No presumption arises favoring arbitration unless an agreement first exists.*

While the law is well settled that both the Federal Arbitration Act and Texas law favor arbitration agreements, they do not supersede state law in the formation of those agreements. Before an agreement can be favored, it must first exist.

The United States Supreme Court has determined that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582 (1960). Courts generally should apply ordinary state-law principles governing contract formation in deciding whether such an agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995).

---

[3] As a result, any motion for reconsideration would be "Denied" by operation of Rule 49.3 of the Texas Rules of Appellate Procedure, which provides in pertinent part as follows: "A motion for rehearing may be granted by a majority of the justices who participated in the decision of the case. Otherwise, it must be denied." Tex. R. App. P. 49.3.

So too, our Supreme Court of Texas has recognized, "Although we have repeatedly expressed a strong presumption favoring arbitration, *the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.*" *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (emphasis added).

Further, Section 2 of the Federal Arbitration Act (FAA), which requires courts to enforce arbitration agreements, expressly states arbitration provisions are subject to invalidation for the same grounds applicable to contractual provisions generally. *See* 9 U.S.C. § 2 (the saving clause). The saving clause of the FAA recognizes arbitration agreements are subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

Accordingly, these defenses along with intent are legal questions related to contract formation and are often referred to generally as "validity." Whether a valid arbitration agreement exists is a legal determination subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *Amateur Athletic Union of the U.S., Inc. v. Bay*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.).

While an agreement to arbitrate is required in the formation, the depth and breadth of what is agreed to be arbitrated is referred to as scope. Arbitration agreements are often interpreted based upon whether they are broad or narrow. Scope refers not to the formation but the breadth of the agreement. "An arbitration clause is characterized as narrow when the language of the clause requires the arbitration of disputes 'arising out of' the agreement." *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). "A broad arbitration clause, on the other hand, includes language such as 'any dispute that

5

arises out of or relates to' the agreement, or disputes that are 'in connection with' the agreement." *Coffman v. Provost * Umphrey Law Firm, LLP*, 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001), *aff'd sub nom. Coffman v. Provost Umphrey, LLP*, 33 F. App'x 705 (5th Cir. 2002).

Parties seeking to form arbitration agreements often speak in broad terms such as "any and all" and "including but not limited to" or, as here, "any claim or dispute between them or against the other or any agent or employee of the other, whether *related* to the employment relationship or otherwise." Here the specific is the employment relationship and the word "otherwise" is scope language intended to cover disputes involving the non-employer/employee parties; without which there would be no scope to cover disputes involving or between "any agent, or employee of the other". Confusion occurs when conflating scope language as formation.

*Plain Language*

As noted above, when determining whether a valid agreement to arbitrate exists, ordinary principles of state contract law are applied. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 102. Under these basic principles, we begin our interpretation of a contract with its text and give words their plain, ordinary, and generally accepted meaning. *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 23 (Tex. 2016).

The express language of the subject agreement contemplates a single relationship when it refers to, "the [singular] employment [singular] relationship [singular]" and therefore specifically does not, without something more, create new obligations other than those which survive the original at-will employment. This case should have been decided on this unambiguous interpretation and the judgment of the trial court should have been affirmed.

*Ambiguity and Intent*

The panel appears to have found ambiguity requiring interpretation of the agreement. "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson*, 128 s.W.3d at 229. "Principles of contract law require courts to ascertain and give effect to the intentions of the parties as expressed within the four corners of the agreement." *Hamblin v. Lamont*, 433 S.W.3d 51, 54 (Tex. App.—San Antonio 2013, pet. denied); *see also El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex.2012); *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 953 (Tex.1983).

In this case, it is undisputed that an arbitration agreement was formed and, according to sentence two, contemplated "the employment relationship." The question raised is whether during the formation of the arbitration agreement the parties contemplated or intended multiple periods of employment. By not asking this question, the majority fails to apply a common-sense examination that reflects the true intent of the parties.

*Presumption – At-Will Employment*

Here, because the language of the agreement is indefinite as to duration and states "any claim or dispute between them". . . "whether related to the employment relationship or otherwise" [scope language] the clauses, if misunderstood, become

blurred and read as an infinite duration. "In Texas, at-will employment is presumed unless shown otherwise." *Gonzales v. Galveston Ind. Sch. Dist.*, 865 F.Supp. 1241 (S.D. Tex. 1994). The parties agree there was a valid arbitration agreement. The question is duration. Since the agreement was incident to employment, the presumption is the Texas general rule applies, and the original intent of the parties at formation is presumed to have understood this as an agreement incident to at-will employment.

*At-Will Employment and the "General Rule"*

"For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment [and any new obligations] may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *See Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998) (citing, among other cases, *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (1888)); *see also* RESTATEMENT OF EMPLOYMENT LAW § 2.01 cmt. a, rptr's note (March 2019 Update) ("The at-will default rule is presently recognized in 49 states and the District of Columbia.").

The Texas Supreme Court adopted the employment-at-will doctrine in *East Line and Red River Railroad Company v. Scott.,See* 10 S.W. at 102.; *see also Montgomery Cnty. Hosp. Dist.*, 965 S.W.2d at 502. Originally the essence of at-will employment is the freedom of either party, employer, or employee, to end their relationship and go about their business without regard to the other.[4] A vital concept of at-will employment has always been it permits independent or mutual separation of the parties. "In an at-will employment relationship, either party may terminate the relationship for any reason, unless the employer-employee relationship has been

---

[4] The general rule is so well recognized that since at least 1977 country music legend Johnny Paycheck has celebrated the general rule to the delight of fans everywhere

8

modified by a legally binding agreement." *See Community Health Systems Professional Services Corporation v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017); *Johnson v. Waxahachie Ind. Sch. Dist.*, 322 S.W.3d 396, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Treadway v. Holder*, 309 S.W.3d 780, 783 (Tex. App.—Austin 2010, pet. denied); *Hood v. Edward D. Jones & Co., L.P.*, 277 S.W.3d 498, 502 (Tex. App.—El Paso 2009, pet. denied), cert. denied, 130 S. Ct. 1892, 176 L. Ed. 2d 365 (2010); *Talford v. Columbia Med. Center at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex. App.—Dallas 2006, no pet.); *Fite v. Cherokee Water Co.*, 6 S.W.3d 337, 340 (Tex. App.—Texarkana 1999, no writ).

The Texas Legislature has created a few narrow exceptions, prohibiting, for example, discharge based on certain forms of discrimination  or in retaliation for engaging in certain protected conduct. (Tex. Lab. Code § 21.051); *see also, e.g.*, Tex. Gov't Code § 437.204 (serving in the state military forces); Tex. Lab. Code §§ 21.055 (opposing a discriminatory practice; filing a charge or complaint; or participating in an investigation, proceeding, or hearing), 101.052–.053 (being a member or nonmember of a union), 451.001 (filing a workers' compensation claim); Tex. Civ. Prac. & Rem. Code § 122.001 (performing jury service); Tex. Fam. Code § 158.209 (being subject to an order or writ of withholding from wages for child support).  But Texas courts have created only one: prohibiting an employee from being discharged for refusing to perform an illegal act. *See Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985). Otherwise, "*[t]he courts of Texas have steadfastly refused to vary from [the general rule]. Id.* at 734 (emphasis added).

In Texas, upon termination, no severance payment is required, and no new obligations or relationships are created after at-will employment is terminated.  So well established is the legal fact no new duty exists following termination of employment that we have held a party is not even required to raise the issue in trial

9

to be preserved on appeal. *See Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174(Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding party preserved no duty of care sufficiency challenge by raising it in a motion for judgment notwithstanding the verdict).

This general rule, as applied to the right to terminate, creates expectations equally to employer and employee. Equally true the rule creates expectations that the termination of employment, unless otherwise agreed, or required by law, fully and finally ends the relationship, at least as to the creation of new obligations.[5]

In the instant case, by holding this agreement valid for a second period of employment the panel denied both Denise Longoria and CKR the right to, and the benefit of the bargain, contemplated by the expectations of termination of the at-will relationship which existed both at original formation and at the time of termination of the first period of employment.

*Standard to Overcome At-Will*

What legal standard is required to overcome the presumption of the at-will general rule? Our court has held, "[W]e may not infer an agreement to alter [employee's] at-will employment status: [Employee] was required to present *evidence of an express agreement*." *Queen v. RBG USA, Inc*., 495 S.W.3d 316, 328 (Tex.App.—Houston [14th Dist.] 2016, pet. denied) (emphasis added); *see Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App.—Austin 1995, writ denied) ("Any modification of at-will employment status must be based on *express rather than implied agreements*.") (emphasis added).

---

[5] Not lost is the irony this expectation may well be the singular benefit accruing to employees under the at-will general rule and that this case involves an employee arguing in favor of arbitration.

More recently, the Texas Supreme Court has stated, "An employer and employee may modify their at-will relationship by agreement, but lest the general at-will rule be eroded, *we have insisted that the parties be definite in expressing their intent*." *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 403 (Tex. 2014) (emphasis added). In discussing overcoming employment-at-will, *Sawyer* states, "For such a contract to exist, the employer must *unequivocally indicate a definite intent* to be bound . . . under *clearly specified circumstances*. General comments . . . do not in themselves manifest such an intent." *Id*. (emphasis added).

Because this employment-related arbitration agreement is indefinite in duration, references a singular employment relationship, fails to extend *expressly* rather than impliedly, and further fails to be "*definite in expressing any other intent*," I find the agreement fails to sufficiently meet the *Queen, Byars,* or *Sawyer* standards required to overcome the general at-will employment rule. For these reasons alone the trial court judgment should be affirmed.[6]

*Overbreadth and Unconscionability*

While this arbitration agreement references a singular employment, it could be argued, as was accepted by the panel, that the language of "whether related to the employment relationship or otherwise" contemplated not only the breadth of multiple iterations of employment relationships but also all claims forever, and therefore survived termination of the at-will employment. This interpretation only survives if you argue the express language, while clearly singular, is ambiguous and yet somehow overcomes the Texas general at-will rule.

---

[6] I agree with Justice Rios's dissent in *Utility Trailer Sales Southeast Texas, Inc.* that an interpretation of the arbitration agreement to cover claims that might arise in connection with subsequent periods of employment of an employee "defeats the parties' intent as reflected by the writing itself." 2017 WL 3044861, at *4 (Rios, J., dissenting).

11

If so, interpreting the original intent at formation of any contract begins with the nature and intent of the parties. Courts must interpret a contract applying common language as it was understood at the time of execution. Where a contract is subject to two interpretations, one leading to reasonable results the other to overbroad, unconscionable, or unreasonable results, the right interpretation is the one that appears reasonable under the circumstances.

"Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Amateur Athletic Union*, 499 S.W.3d at 107; *see Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex.2015); *In re Palm Harbor Homes*, 195 S.W.3d at 677.

Here the language states the parties, "agree that any claim or dispute between them or against the other or any agent or employee of the other, whether related to the employment relationship or otherwise . . . ." Longoria argues, the "any claim or dispute between the parties," (in conjunction with an indefinite term), covers even a potential automobile collision between Ms. Longoria and an employee of CKR should it ever occur, "even twenty years from now." This argument was further reiterated at oral argument.

Following Longoria's logic, even this hypothetical is too narrow. Such interpretation would also contemplate the forced arbitration between Longoria and a future spouse over marital property and even child custody, should she ever marry or have a child with an employee of CKR. Such interpretation mandates the courts to modify this agreement to avoid violations of Texas statutes or the Uniform Child Custody Jurstication Act. *See In re Ron*, ___ S.W.3d ___, 2018 WL 5290024, at *6 (Tex. App.—Houston [14th Dist.] Oct. 25, 2018, orig. proceeding).

Longoria's argument of infinite duration fails to address consideration. The

12

question of consideration for a contract of life long servitude[7] begs the question of substantive unconscionability. Here the sole consideration for this agreement is at-will employment. When at-will employment ends, the consideration for future obligations must end as well. This is not to suggest the enforceability of an arbitration agreement may not survive employment, but without more, the general rule requires the ability to impose new obligations ends with the employment. "Texas law renders unconscionable contracts unenforceable*." In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).

Because this agreement was supported solely by consideration of at-will employment, any interpretation of lifelong enforceability is substantively unconscionable[8] and therefore renders the agreement unenforceable such that the trial court's ruling should have been affirmed.

*Construction of Two Interpretations*

"Where, in the determination and construction of contracts, the language thereof is capable of two constructions, an interpretation which makes the agreement fair and reasonable will be adopted in preference to one which leads to harsh, oppressive or unreasonable results." *Christie, Mitchell & Mitchell Co. v. Selz*, 313 S.W.2d 352, 354 (Tex. Civ. App.—Fort Worth 1958, writ dism'd) In contrast to the above unconscionable reading, a reasonable alternative exists. Interpretation of the agreement as an employment arbitration agreement, intended to cover any and all

---

[7] At oral argument, Longoria conceded the life-long duration of the agreement: THE COURT: And the other side of that coin is it is your position that that agreement would have been valid until either the company ceased to exist or she died -- or there was a revocation or something else happened -- LONGORIA: Right.
THE COURT: -- but absent something -- absent some action of the parties, as I understand your position, it was going to be good until she died or the company ceased to exist.
LONGORIA: Correct, Your Honor.
    [8] Proceedural unconscionability as to notice requirements to employees is not addressed in this case as the employee is not objecting to the enforceability of this agreement.

matters between the parties, their agents, servants and employees, related to or arising during the single term of employment makes the broad scope language unambiguous, reasonable, and understandable. In essence, the parties seek to submit all claims arising during the indefinite term of employment to arbitration. This interpretation, in conjunction with the general rule, would find the agreement creating obligations only arising out of the first period of employment. As such Appellant would not be able to sustain her burden as to either the agreement or the scope as applied to the second period of employment and thus the trial court's judgment should be affirmed.

*En Banc Reconsideration*

Incidental to this case are the procedural anomalies which prevented this case from full consideration by the panel, which is another reason why CKR's motion for en banc reconsideration should be granted. Should en banc reconsideration not occur, I would urge the Texas Supreme Court to take this case under consideration to clarify the legal standards required to overcome the presumptions created by the Texas general rule of at-will employment in employee arbitration agreements and to address the issue of consideration and unconscionability required to establish a life-long agreements.

*Subsequent Ratification*

Nothing in this opinion is intended to suggest that an arbitration agreement may not be subsequently ratified. It is possible that a rehire process may have contemplated the arbitration agreement being renewed; however this was not argued or addressed in the court below or at oral argument and no evidence, other than the fact of rehire, even suggests such intent.

## CONCLUSION

It is not that the parties could not have expressly stated their intention to cover "any and all employment relationships," or "any and all causes of action related to or arising from any and all employment relationships," but the failure to be explicit makes the default, the general rule, applicable.

Accordingly, before a party to an at-will-relationship may impose new burdens of arbitration arising out of a terminated relationship and its associated agreements into a new relationship, they may do so only after showing clear, explicit and definite intent. In this agreement, the express language of the agreement specifically references a single relationship, showing no regard for future employment relationships.

Because the ruling of the panel fails to consider the unambiguous language of a single employment relationship; and because the ruling fails to consider the nature and intent of the parties at formation; and because it conflates the scope and formation language, the opinion fails to protect the Texas general rule of at-will employment. It also fails to require the parties to meet the legal standard to "insist that the parties be definite in expressing their intent" to overcome the at-will presumption, and finally, because the enforcement of life-long commitments solely in and for consideration of at-will employment is substantially unconscionable, I respectfully dissent.

/s/    Jerry Zimmerer
Justice

En Banc Court consists of Chief Justice Frost, J. Christopher, J. Wise, J. Bourliot, J. Spain, J. Hassan, and J. Poissant, with Justice Jewell not sitting.

15